# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:       **February 24, 2015**

**NO. 33,554**

**CHARLES WOOD,**

     Plaintiff-Appellant,

v.

**THE CITY OF ALAMOGORDO**
**and SAM TRUJILLO,**

     Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Manuel I. Arrieta, District Judge**

John R. Hakanson, P.C.
Miguel Garcia
Alamogordo, NM

for Appellant

Brennan & Sullivan, P.A.
James P. Sullivan
Christina L.G. Brennan
Santa Fe, NM

Robyn Hoffman
Tijeras, NM

for Appellees

**OPINION**

**KENNEDY, Judge.**

{1}	Plaintiff Charles Wood appeals the district court's order granting summary judgment dismissing his claims against the City of Alamogordo and Sam Trujillo (collectively, Defendants) for violation of his procedural due process rights under both the United States and New Mexico Constitutions.[1] Wood asserts that the existence of bias in pre-termination and post-termination procedures violated his right to due process. We conclude as a matter of law that an employee is not entitled to a non-biased, pre-termination decisionmaker. And, to the extent that Wood asserts post-termination bias, we conclude that he failed to establish sufficient material facts to support this claim. Accordingly, we affirm.

**I.	BACKGROUND**

{2}	Wood was employed as Captain of Operations of the Alamogordo Department of Public Safety when he became the subject of domestic abuse allegations. Before he was arrested and while the investigation was ongoing, Wood was advised by

---

[1]Wood does not argue that the New Mexico Constitution should be interpreted to provide greater protection than the federal due process clause provides and concedes that the analysis is the same. We have, therefore, limited our analysis accordingly. *See State v. Gomez*, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1 (holding that where a state constitutional provision has not been interpreted differently than its federal analog, the party seeking different interpretation must assert in the district court that the state constitution offers greater protection and must provide reasons in support of a different interpretation).

Trujillo, the Director of the Alamogordo Department of Public Safety, Wood would be terminated if arrested. Trujillo also informed Wood of the benefits of early retirement versus termination. Wood asserts that Trujillo told him that Wood "had no chance of winning this" during their discussion of the pre-termination hearing over which Trujillo would preside. Although Wood would have also been entitled to a post-termination appeal heard by the city manager, Wood alleged that Trujillo had remarked to him in the past that Trujillo had the city manager "under his thumb." Wood therefore asserts that he elected early retirement before he was either arrested or terminated because exercise of the pre- and post-termination procedures available to him would have been futile.

{3}    Wood filed a complaint, under 42 U.S.C. § 1983 (2013), against Defendants, claiming they violated his procedural due process rights under the United States and New Mexico Constitutions by failing to provide fair pre- and post-termination procedures and that Defendants violated the Peace Officer's Employer-Employee Relations Act. The parties stipulated to dismissal of the Peace Officer's Employer-Employee Relations claim. On the motion for summary judgment, the district court determined that, although Wood could conceivably establish a cause of action based on a combination of the New Mexico Constitution and 42 U.S.C. 1983's grant of remedies for a violation of constitutional rights, he failed to do so in this case. The

2

district court granted summary judgment in favor of Defendants, ruling that Trujillo was entitled to qualified immunity because he was acting in his official capacity and because Wood failed to show that Trujillo violated clearly established law. The district court also ruled there was no genuine issue of material fact as to a violation by the City of Wood's procedural due process rights. This appeal followed.

## II. DISCUSSION

{4}     On appeal, Wood contends that the district court erred by (1) determining that Wood had not demonstrated a violation of clearly established law with respect to Trujillo, and (2) concluding that Wood had not presented sufficient material facts to demonstrate a violation of his procedural due process rights by the City. We begin by setting out the standards relevant to our review of Wood's claims and then turn to address these arguments.

## A. Standard of Review and Applicable Law

{5}     "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582; *see* Rule 1-056(C) NMRA. We review a district court's grant of summary judgment de novo. *Self*, 1998-NMSC-046, ¶ 6.

{6}     The party moving for summary judgment has the burden to make a prima facie showing that no genuine issue of material fact exists. *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 1993-NMCA-008, ¶ 10, 115 N.M. 159, 848 P.2d 1086. "Once this prima facie showing has been made, the burden shifts to the non-movant to [show] the existence of specific evidentiary facts which would require trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). "The non-movant may not rely on allegations or speculation, but must come forward with admissible evidence demonstrating a genuine issue requiring trial and also demonstrate that facts allegedly in dispute are material to the claims at issue." *Buke, LLC, v. Cross Country Auto Sales, LLC*, 2014-NMCA-078, ¶ 21, 331 P.3d 942, *cert. denied*, 2014-NMCERT-007, 331 P.3d 923. "To determine which facts are material, the court must look to the substantive law governing the dispute[.] The inquiry's focus should be on whether, under substantive law, the fact is necessary to give rise to a claim." *Romero*, 2010-NMSC-035, ¶ 11 (internal quotation marks and citations omitted). Finally, because resolution on the merits is favored, "we view the facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits[.]" *Handmaker v. Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879.

## B.  Qualified Immunity, Clearly Established Law, and Trujillo

{7}  We begin by addressing Wood's argument that the district court erred in concluding he failed to establish that Trujillo violated clearly established law. In order to analyze this issue, we must first discuss the concept of qualified immunity.

{8}  Under 42 U.S.C. § 1983, a government official performing discretionary functions is entitled to qualified immunity from suit as long as his "conduct [did] not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Cockrell v. Bd. of Regents of N.M. State Univ.*, 1999-NMCA-073, ¶ 8, 127 N.M. 478, 983 P.2d 427 (alterations in original) (internal quotation marks and citations omitted). This Court has previously stated:

> [Q]ualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Put another way, qualified immunity is "the usual rule," such that "only in exceptional cases" will governmental actors have no immunity from § 1983 claims brought against them for money damages in their individual capacities.

*Cockrell*, 1999-NMCA-073, ¶ 8 (citations omitted).

{9}  Once qualified immunity is raised, our courts apply a two-part test:

> First, a court must look at the undisputed facts and those facts adduced by the party opposing summary judgment to see if there is any evidentiary support for finding a possible violation of law. Second, if the law may have been violated, a court must ask if that law was clearly established at the time of the alleged violation.

*Id.* ¶ 9 (citations omitted). Thus, as this Court has previously recognized, "[o]n a summary judgment motion the issue is an essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Id.* (internal quotation marks and citation omitted). Ultimately, "[a]n official is entitled to qualified immunity on a motion for summary judgment if the right allegedly violated was not so clearly established that an objectively reasonable, similarly situated official would have known that the challenged actions would violate the Constitution." *Id.*

{10}    Wood relies on *Reid v. New Mexico Board of Examiners of Optometry* to argue that Trujillo violated clearly established law and is therefore not entitled to qualified immunity. 1979-NMSC-005, 92 N.M. 414, 589 P.2d 198. In *Reid*, our Supreme Court reversed a board of examiners' decision revoking an optometrist's license to practice because the board failed to disqualify one of its members on the basis of bias. *Id.* ¶¶ 1, 9. The Supreme Court held that "[w]hen government agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process." *Id.* ¶ 8. Thus, Wood argues that, "[a]t a minimum, a fair and impartial tribunal requires that the trier of fact be disinterested

and free from any form of bias or predisposition regarding the outcome of the case" and that Trujillo's predisposition violated his right to due process. *Id.* ¶ 7.

{11} While *Reid* emphasizes the importance of fairness in administrative procedures, we note that it addresses procedures in which an ultimate decisionmaker is biased. *Id.* ¶ 8. The facts presented by *Reid* did not require our Supreme Court to address the level of procedure required to satisfy due process at a pre-deprivation stage. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)). Thus, *Reid* is distinguishable. Because our case law does not address whether bias by the decisionmaker at the pre-termination phase violates procedural due process, we turn to federal law.

{12} Courts that have addressed this issue have held that procedural due process does not require an unbiased decisionmaker at the initial termination phase. In *McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994), the Eleventh Circuit held that "due process is satisfied when the challenger has an opportunity to present his [or her] allegations and to demonstrate the alleged bias." According to the Eleventh Circuit, "[a] demonstration that the decisionmaker was biased, however, is not tantamount to a demonstration that there has been a denial of procedural due process." *Id*. When an employee facing termination "learns of the decisionmaker's alleged bias prior to or

7

during the proceeding[,] . . . courts usually require that the challenger contemporaneously object to the bias." *Id.* The Eleventh Circuit explained:

> [U]nlike substantive due process violations, procedural due process violations do not become complete unless and until the state refuses to provide due process. More specifically, in the case of an employment termination case, due process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available the means by which [the employee] can receive redress for the deprivations.

*Id.* (alterations in original) (internal quotation marks and citations omitted).

{13} The Third Circuit recognized that the initial termination decision is usually made by an employee's direct supervisor or someone working in the same organization as the employee because that person is already familiar with the employee and the situation. *McDaniels v. Flick*, 59 F.3d 446, 460 (3rd Cir. 1995). "[T]o require that the state ensure an impartial pre[-]termination hearing in every instance would as a practical matter require that termination decisions initially be made by an outside party rather than the employer as charges of bias always could be made following an in-house discharge." *Id.* The Third Circuit reasoned that, while it is not surprising that an individual responsible for the pre-termination decision would be the target for claims of bias, to require pre-termination decisions to be made by an outside party would be unduly cumbersome for the employer and may be unreasonably invasive for the employee. *Id.* Following the decision of the Eleventh

8

Circuit in *McKinney*, as well as the decisions of the Ninth, Sixth, and Fifth Circuits, the Third Circuit concluded in *McDaniels* that "such excessive pre[-]termination precaution is [not] necessary where the state provides a neutral tribunal at the post-termination stage that can resolve charges of improper motives." *McDaniels*, 59 F.3d at 460; *see Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991) ("[F]ailure to provide an impartial decisionmaker at the pre[-]termination stage, of itself, does not create liability, so long as the decisionmaker at the post-termination hearing is impartial."); *Duchesne v. Williams,* 849 F.2d 1004, 1005 (6th Cir. 1988) (holding that procedural due process in the employment termination context does not require a neutral and impartial decisionmaker at the pre-termination hearing, but only a right of reply before the official responsible for the discharge); *Schaper v. City of Huntsville,* 813 F.2d 709, 714-16 (5th Cir. 1987) (holding that, even if allegations of bias and conspiracy on the part of the decisionmaker were true, "the state cannot be expected to anticipate such unauthorized and corrupt conduct" (citing *Parratt v. Taylor,* 451 U.S. 527, 541-44 (1981)). We agree and hold that due process does not require the state to provide an employee with an impartial decisionmaker at the pre-termination level.

{14}     Viewing Wood's argument in light of our holding, Trujillo was the person in the best position to know the charges against Wood and whether termination was

9

warranted. Trujillo warned Wood that his failure to give a statement to the investigating agency would result in an arrest, which, in turn, would result in his termination. Trujillo also told Wood that, from what Trujillo knew of the case, there was no way Wood would win an appeal of his termination. Trujillo's statements appear to explain to Wood the consequences of refusing to give a statement to the investigating agency. Even assuming Wood properly objected that Trujillo was biased, and Trujillo was, in fact, biased, the law is not clearly established that Wood was entitled to an unbiased pre-termination decisionmaker and, for this reason, we affirm the district court.

{15}     We note, however, that case law holding that it is not necessary to guarantee a completely disinterested pre-termination decisionmaker relies on the fact that the employee is given access to a neutral post-termination tribunal that can resolve charges of improper motive. *See, e.g.*, *McDaniels*, 59 F.3d at 460. We further note that Wood asserts that the city manager's decision would be tainted or influenced by Trujillo. Specifically, Wood testified in a deposition that Trujillo had made comments that "he had the . . . [c]ity [m]anager . . . under his thumb." Wood does not, however, indicate when these statements were made in relation to his termination and provides no other information to support his assertion that the review by the city manager

10

would not be neutral.[2] As we discussed above, the non-movant may not rely on speculation or conclusions to overcome a movant's prima facie showing. *Buke*, 2014-NMCA-078, ¶ 21. In addition, affidavits or depositions containing hearsay are not sufficient evidence of a fact. *Seal v. Carlsbad Indep. Sch. Dist.*, 1993-NMSC-049, ¶ 14, 116 N.M. 101, 860 P.2d 743. We therefore cannot conclude that Wood established that summary judgment was improper.

## C.    Procedural Due Process and the City

{16}    We next turn to Wood's argument that the district court erred in determining that his procedural due process rights were violated. We understand this portion of Wood's argument to be directed at the dismissal of his claims against the City.

{17}    To prevail in a 42 U.S.C. § 1983 claim against a government entity based on conduct of a government official,

> a plaintiff must show more than just that the entity's agent violated the plaintiff's rights; the plaintiff must also demonstrate that the injury to the plaintiff resulted from the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.

*Niederstadt v. Town of Carrizozo*, 2008-NMCA-053, ¶ 11, 143 N.M. 786, 182 P.3d 769 (internal quotation marks and citation omitted). In other words, "municipal

---

[2]We note that Wood argues all of his proffered facts were not accepted as true. To the extent that Wood lists proffered facts that are more akin to conclusions, neither this Court nor the district court is bound by Wood's characterization of conclusions or speculation as fact. *See Buke*, 2014-NMCA-078, ¶ 21.

11

liability under 42 U.S.C. § 1983 is limited to deprivations of federally protected rights caused by action taken pursuant to official municipal policy of some nature." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 471 (1986) (internal quotation marks and citation omitted). We note, however, that "municipal liability may be imposed for a single decision by municipal policymakers . . . where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 480-81.

{18}     Wood has not alleged an injury that resulted from the City's policy or custom. Moreover, even if we were to assume Trujillo is a policymaker, as we have discussed above, Wood has failed to demonstrate that Trujillo's actions were unconstitutional. We therefore conclude that Wood has not demonstrated that the district court's grant of summary judgment in favor of the City was in error.

**III.   CONCLUSION**

{19}     For the reasons stated above, we conclude that the district court's grant of summary judgment was proper. Accordingly, we affirm.

{20}     **IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Judge**

12

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**


_____
**LINDA M. VANZI, Judge**