This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37712**

**TODD LOPEZ, as the Wrongful Death Personal Representative of the ESTATES OF MARGARET DOMINGO, Deceased, JERDANIA DOMINGO, Deceased, and JEREMIAH DOMINGO, Deceased,**

and

**JERRY DOMINGO, Individually, and as Next Friend of NIKKIA RUTH NAPOLEON, JORDYN RILEY DOMINGO, and TYMIA XANDRIA CECLIA NAPOLEON, Minors,**

      Plaintiffs-Appellants,

v.

**EDEAL DAIRY, LLC and LAS NUTRIAS, LLC,**

      Defendants-Appellees,

and

**TRIPLE TRUCKING CO., INC. and MATTHEW D. MORGAN,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

Lopez Scott, L.L.C.
Orlando R. Lopez
San Antonio, TX

Chapa Law Group, PC

Miguel J. Chapa
San Antonio, TX

Hunt Law Firm
Lee R. Hunt
Santa Fe, NM

for Appellants

Allen Law Firm, LLC
Meena H. Allen
Kerri L. Allensworth
Albuquerque, NM

for Appellee Edeal Dairy LLC

Riley, Shane & Keller, P.A.
David A. Gonzales
D. Chet Alderete
Albuquerque, NM

for Appellee Las Nutrias LLC

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}**     Todd Lopez and Jerry Domingo (Plaintiffs) appeal from the grant of Edeal Dairy, LLC (Edeal Dairy) and Las Nutrias, LLCs' (Las Nutrias) (collectively, Defendants) motion for summary judgment.[1] Plaintiffs assert that the district court erred in granting summary judgment because they presented sufficient evidence to create a genuine dispute of material fact. We affirm.

**BACKGROUND**

**{2}**     Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth here only a brief overview of the relevant historical facts of this case. We reserve discussion of specific facts where necessary to our analysis.

---

[1]During the pendency of this appeal, Plaintiffs and Las Nutrias reached a settlement agreement. We must nonetheless resolve whether the district court properly granted summary judgment to Edeal Dairy. We thus address the issues on appeal as presented by the parties in their briefing. Following the submission of this case to the undersigned panel, Edeal Dairy also filed a motion to dismiss, asserting that Plaintiffs have failed to state a claim upon which relief can be granted. *See* Rule 1-012(B)(6) NMRA; Rule 12-401(B)(3) NMRA. In light of our holding affirming the district court order granting summary judgment, we decline to address the motion to dismiss.

**{3}** This case arises from a fatal car accident that occurred in the morning hours of September 25, 2014, opposite the Giant Hilltop Gas Station (the Hilltop Station) in Bloomfield, New Mexico. The crash involved numerous vehicles, including a Chevrolet Silverado truck driven by Salomon Reyes, a tractor-trailer driven by Matthew Morgan of Triple S Trucking, and a Chevrolet sedan driven by Jeremiah Domingo, in which Margaret Domingo and Jerdania Domingo (the Domingos) were passengers. The Domingos were killed in the crash. The accident occurred when a separate, unidentified tractor with a flatbed trailer (the unidentified tractor-trailer) pulled out of the Hilltop Station while attempting to turn left and proceed north on U.S. Highway 550. Its driver failed to yield to oncoming traffic in the southbound lanes, and as the unidentified tractor-trailer crossed the southbound lanes its trailer was struck by Reyes's Silverado truck. Morgan, also travelling southbound, swerved attempting to avoid hitting Reyes's Silverado truck, causing Morgan's own tractor-trailer to jackknife into the northbound lanes where it crashed into the Domingo's sedan. Eyewitnesses stated that the unidentified tractor-trailer left the scene of the accident.

**{4}** The San Juan County Sherriff's Department assigned Detective Jacob Courtney to investigate the accident. Detective Courtney spoke to the Hilltop Station employees and reviewed surveillance footage from inside and outside of the Hilltop Station. Detective Courtney also interviewed Jerry Cordova, a motorist not involved in the collision, but who slammed on his brakes to avoid hitting the unidentified tractor-trailer as he travelled northbound. Cordova described the unidentified tractor-trailer as "kind of a light blue . . . with a flatbed trailer unloaded." Detective Courtney also obtained logbooks and surveillance footage from a nearby agricultural area, Navajo Agricultural Products Industry (NAPI). The logbooks and footage indicated that a flatbed tractor-trailer arrived at NAPI almost daily between 6:00-8:00 a.m.; however, on September 25, 2014, the logbooks reflect that the driver of that trailer, Gilbert Martinez, arrived instead at 2:20 p.m. While Martinez typically wrote in the NAPI logbooks that he was employed by Edeal Dairy, on September 25, 2014, he stated that he was driving for Las Nutrias.

**{5}** Based on the NAPI logbooks and surveillance footage, Detective Courtney executed a search warrant of Las Nutrias and specifically Trailer 9107, the trailer that was regularly pulled by Martinez (the Las Nutrias trailer) with what Detective Courtney described to be a "semi" that was "possibly a bluish color." Given the nature of the initial collision with Reyes's Silverado truck, Detective Courtney did not believe that the semi itself—in other words, the "tractor" portion of a tractor-trailer—had been struck or could have been damaged during the accident. When he executed the warrant on the Las Nutrias trailer, Detective Courtney noted that it had some physical damage, including a gouge on one of the driver's side tires, as well as several bolts, and an air brake that appeared to have been recently replaced. In addition to his investigation of Las Nutrias, Detective Courtney investigated a number of trucking companies and nearby businesses in an effort to ascertain the owner and driver of the unidentified tractor-trailer, but ultimately was unable to reach a satisfactory conclusion.

**{6}** Initially, Plaintiffs filed a complaint for wrongful death, loss of consortium, and punitive damages against Morgan and Triple S Trucking in district court in October

2015. Plaintiffs later amended their complaint, adding Edeal Dairy and Las Nutrias as Defendants and alleging that the unidentified tractor-trailer belonged to one of these Defendants, whom Plaintiffs contend were joint venturers. Following discovery, Las Nutrias filed its motion for summary judgment asserting that there was no genuine issue of material fact as to whether Martinez and Las Nutrias were the driver and owner of the unidentified tractor-trailer. Edeal Dairy joined Las Nutrias' motion. After a hearing, the district court issued an order granting motion for summary judgment as to both Defendants. This appeal followed.

## DISCUSSION

**{7}** On appeal, Plaintiffs allege that the district court erroneously granted summary judgment, contending they presented sufficient evidence from which a reasonable jury could determine that (1) Martinez drove the unidentified tractor-trailer and caused the accident; and (2) Las Nutrias and Edeal Dairy are responsible for their driver Martinez's negligence.[2]

### I.     No Admissible Evidence Creates a Genuine Issue of Material Fact That Martinez Was Involved in the Accident or That the Unidentified Tractor-Trailer Belonged to Defendants

**{8}** "We review the district court's grant of summary judgment de novo." *All. Health of Santa Teresa, Inc. v. Nat'l Presto Indus.*, 2007-NMCA-157, ¶ 7, 143 N.M. 133, 173 P.3d 55. "Summary judgment is appropriate where there is no evidence raising a reasonable doubt that a genuine issue of material fact exists." *Beggs v. City of Portales*, 2009-NMSC-023, ¶ 10, 146 N.M. 372, 210 P.3d 798. Once a prima facie case for summary judgment has been made, "the burden then shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Carrillo v. My Way Holdings, LLC*, 2017-NMCA-024, ¶ 24, 389 P.3d 1087 (internal quotation marks and citation omitted). "All reasonable inferences from the record are construed in favor of the non-moving party." *Garcia v. Underwriters at Lloyd's, London*, 2008-NMSC-018, ¶ 12, 143 N.M. 732, 182 P.3d 113. "When disputed facts do not support reasonable inferences, they cannot serve as a basis for denying summary judgment." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280.

### A.     Appellants Failed to Present Admissible Evidence Creating a Genuine Issue of Fact That Martinez Was the Driver or Las Nutrias or Edeal Dairy Was the Owner of the Unidentified Tractor-Trailer That Caused the Accident

**{9}** Plaintiffs allege that summary judgment was improper in light of evidence they presented, which they maintain established genuine issues of material fact from which a reasonable jury could find that Martinez, driving for Las Nutrias and/or Edeal Dairy,

---

[2]Because we conclude that there is no genuine dispute of material fact suggesting that Martinez was the driver or Defendants were the owners of the unidentified tractor-trailer, we decline to address whether Las Nutrias and Edeal Dairy are joint venturers.

caused the accident. Defendants answer that Plaintiffs "have failed to come forward with any witness who positively identified the Las Nutrias vehicle as the [unidentified] tractor[-]trailer." In particular, Defendants assert that Plaintiffs' reliance on the hearsay statements of motorist Cordova were insufficient to overcome summary judgment, and further that the record established that the Las Nutrias trailer was not the unidentified tractor-trailer.

**{10}** First, Defendants are correct that Plaintiffs provided neither testimony of, nor an affidavit from Cordova. Instead, they rely primarily on Detective Courtney's deposition testimony, in which he described his investigation, including his contact with and interview of Cordova. Plaintiffs explain that when Detective Courtney interviewed Cordova, Cordova stated that he witnessed the accident and described the unidentified tractor-trailer that precipitated it "as a semi[]truck with a sleeper and was teal blue or green in color[,]" and that pulled "a flatbed trailer of some sort and that it appeared to be unloaded." Plaintiffs contend that description, combined with the fact that Detective Courtney later found some damage on the Las Nutrias trailer, was sufficient to establish a genuine dispute of material fact as to whether the Las Nutrias trailer was pulled by the unidentified tractor-trailer. Defendants' answer that statements by Cordova as relayed by Detective Courtney are inadmissible hearsay of a nature insufficient to overcome a motion for summary judgment. *See* Rule 11-801(C) NMRA (defining "hearsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement").[3]

**{11}** "The form of summary judgment evidence itself does not have to meet the requirements of admissibility for trial evidence, but the substance of the evidence must be of a type that can be admitted at trial." *Seal v. Carlsbad Indep. Sch. Dist.*, 1993-NMSC-049, ¶ 14, 116 N.M. 101, 860 P.2d 743 (emphasis omitted). The party opposing the motion for summary judgment "must put forth specific facts admissible into evidence to establish a disputed material fact." *Id.* "[A]ffidavits or depositions containing hearsay are not sufficient evidence of a fact." *Wood v. City of Alamogordo*, 2015-NMCA-059, ¶ 15, 350 P.3d 1185.

**{12}** As offered by Plaintiffs, the statements by Cordova to Detective Courtney are clearly hearsay. *See* Rule 11-802 NMRA (stating "[h]earsay is not admissible except as provided by these rules"). Each statement was made by Cordova, who was not testifying or being deposed, and was offered to prove the truth of the nature and color of the unidentified tractor-trailer. Rule 11-801(C). Because Detective Courtney's deposition merely relayed hearsay statements purportedly spoken by Cordova during a telephonic

---

3Plaintiffs argue as well that Defendants failed to preserve the issue of whether Cordova's statements were hearsay and, therefore, "Cordova's statements to the authorities must be taken as offered whether his deposition was taken or not." We disagree that Defendants failed to preserve the issue. To the contrary, Las Nutrias's reply in support of its motion for summary judgment specifically objected to Cordova's statements, asserting that each was inadmissible hearsay and "should be dismissed out of hand and not considered by [the district c]ourt for purposes of rebutting summary judgment." Moreover, the district court determined that Detective Courtney's deposition incorporated inadmissible hearsay and ruled that Plaintiffs failed to rebut Defendants' prima facie case with admissible evidence.

interview, the statements on which Plaintiffs rely "are not sufficient evidence of a fact." *Wood*, 2015-NMCA-059, ¶ 15 (holding that a recently terminated employee's deposition testimony—in which the employee reiterated statements made by his boss that did not specifically relate to his termination—was insufficient to demonstrate that the employee was denied access to a neutral post-termination tribunal). Stated simply, under our precedent, Plaintiffs' reliance on hearsay statements made to a detective investigating possible criminality associated with the accident failed to satisfy their burden to overcome summary judgment.

**{13}**   Second, in the absence of admissible evidence from Cordova, the record established that the Las Nutrias trailer was not involved in the accident. For instance, four eyewitnesses who were confirmed to have observed the accident submitted affidavits that were attached to two photographs of the Las Nutrias trailer, stating that it was not the unidentified tractor-trailer involved in the accident. Reyes, the driver of the Chevrolet Silverado truck that initially hit the unidentified tractor-trailer, submitted an affidavit in which he stated, "It is my opinion to certainty based on my personal observations from the scene that the semi[]tractor[-]trailer shown . . . was not the [unidentified] tractor[-]trailer . . . with which I was involved in a collision." Likewise, Jose Ramirez, who heard the impact of the accident and observed the unidentified tractor-trailer leaving the scene, also signed an affidavit, stating, "[T]hat the semi-tractor[-]trailer shown in the photographs attached . . . was not the semi-tractor[-]trailer that exited the Hilltop . . . [S]tation[.]" Ben Charley, another witness to the accident, agreed in his affidavit that the semi-tractor[-]trailer was not the Las Nutrias trailer. Finally, Ted Glover, another witness to the collision, testified in a deposition that the unidentified tractor-trailer had a "dark blue CH style Mack" tractor with a white stripe, pulling an older steel black trailer with a steel deck. His description does not match the lighter blue color of the unidentified tractor-trailer that pulled the Las Nutrias trailer, which had no stripes of any kind or color, and was a 2007 Peterbilt brand 387 model tractor. Glover's description of the unidentified tractor-trailer also does not match the Las Nutrias trailer, which is a silver combination aluminum and steel trailer with an aluminum deck.[4]

**{14}**   Plaintiffs also assert—without any citation to the record—that in addition to Cordova's statement, "Detective . . . Courtney[] conducted a step-by-step investigation that determined Martinez . . . was involved in the initial hit-and-run that ended with the deaths of the Domingo family members." They argue that "Detective Courtney's investigation raised issues of material fact as to whether Martinez was driving a Las Nutrias tractor and flatbed trailer at the time of the crash and at the location of the crash." Defendants answer that "Detective Courtney testified he was never able to confirm that the tractor[-]trailer . . . Cordova allegedly observed was in fact the

---

[4]Plaintiffs dispute the accuracy of Glover's statements, asserting "[d]ue to the darkness, Glover may not have been able to precisely describe the vehicle and trailer" thus, "any inconsistencies . . . must be construed in the light most favorable to Plaintiffs." Plaintiffs fail to point to anything in the record indicating that Glover's testimony is inaccurate or inconsistent. To the contrary, Glover indicated that he was confident in his descriptions stating, "[The unidentified tractor-trailer] was an older steel trailer. My father's got one just almost identical to it." In any event, "[t]his Court will not search the record to find evidence to support an appellant's claims." *Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 (alteration, internal quotation marks, and citation omitted).

[unidentified] tractor[-]trailer," but similarly failed to provide citation in the record to any such statement by Detective Courtney, instead citing only generally to his awareness that there were numerous tractor-trailers in the area the morning of the accident.

**{15}** Our own review of Detective Courtney's deposition testimony reveals that Detective Courtney's investigation concluded, because he and his supervisors "felt there was not enough to pursue charges [against Martinez], and there hasn't been any investigation since." Indeed, at no time did Detective Courtney conclude or insinuate a belief that Martinez was driving the unidentified tractor-trailer that precipitated the accident at issue on appeal, despite Plaintiffs' unsupported contention to the contrary. "Claimed disputed facts cannot serve as a basis for denying summary judgment if the evidence adduced is insufficient to support reasonable inferences." *Vigil v. Taintor*, 2020-NMCA-037, ¶ 4, 472 P.3d 1220 (internal quotation marks and citation omitted).

**{16}** Accordingly, we conclude Plaintiffs failed to present admissible evidence sufficient to establish a reasonable inference that the unidentified tractor-trailer was driven by Martinez or belonged to Las Nutrias and/or Edeal Dairy.

**B.     Evidence of Martinez's Pattern and Habit Does Not Create a Genuine Issue of Fact That Martinez Was Present at the Hilltop Station at the Time of the Accident**

**{17}** Plaintiffs argue that "[e]vidence of [his] pattern and habit place Martinez at the crash site[.]" Plaintiffs assert that Martinez's testimony that he routinely passed by the Hilltop Station on his morning commute, along with the logbook he used, which Martinez filled out the night before the crash, established that Martinez planned to drive to NAPI the morning of the accident. Relying on the NAPI logs, Plaintiffs assert that "[a] reasonable jury could infer" that "Martinez returned to Edeal Dairy after the accident to conceal the damaged trailer and retrieve an undamaged trailer to make the pick up at NAPI that afternoon." Defendants respond that Plaintiffs' arguments regarding the logbooks and the characterization of Martinez's testimony about them are "purely argument of counsel, and there is no evidence that . . . Martinez was at the scene of the accident." We agree.

**{18}** Although Plaintiffs provided evidence demonstrating that Martinez usually passed by the Hilltop Station in the morning, such evidence is not supportive of Plaintiff's theory and does not establish a genuine issue of material fact. While habit evidence provided by Plaintiffs supports an inference that Martinez followed his habit of *driving by* the Hilltop Station on his way to NAPI, Plaintiffs fail to provide any evidence that Martinez habitually *stopped* at the Hilltop Station. Indeed, Martinez testified that he did not routinely stop at the Hilltop Station on his drive to NAPI. "[M]ere argument or bare contentions of the existence of a material issue of fact is insufficient." *Clough v. Adventist Health Sys., Inc.*, 1989-NMSC-056, ¶ 7, 108 N.M. 801, 780 P.2d 627. Moreover, surveillance footage from both inside and outside the Hilltop Station does not place Martinez at the Hilltop Station on the morning of September 25, 2014. Contrarily, NAPI surveillance footage confirms Martinez's testimony that he was at NAPI in the

afternoon on the day of the accident. During his deposition Martinez also provided an explanation for the inaccuracies of his logs, stating, "I made my log that night before, and I just left it that way. I thought I was going to run that way, the way I was going to run the following day, and I didn't." Because Plaintiffs fail to provide evidence, habit or otherwise demonstrating that Martinez stopped at the Hilltop Station on the morning of the accident, evidence demonstrating that Martinez regularly drove by the Hilltop Station does not create a genuine dispute of material fact.

### C. Physical Damage to the Las Nutrias Trailer Does Not Create a Genuine Issue of Fact That It Was the Unidentified Tractor-Trailer

{19}   Plaintiffs contend that the physical damage to the Las Nutrias trailer "raises additional issues of material fact regarding whether the [unidentified tractor-]trailer was involved in the hit-and-run crash." During his investigation, Detective Courtney inspected the Las Nutrias trailer, which was routinely driven by Martinez including on the day of the accident. Detective Courtney observed that the inside tire of the back axel had a large gouge in it. He also observed loose bolts on the trailer's frame, a metal crossbeam with a large dent, fresh paint underneath the trailer, that the front air brake had been replaced on the driver's side, and that there were newer tires on the front axle driver's side than those of the rear axles. However, during his deposition, Detective Courtney stated that he did not feel comfortable concluding that the Las Nutrias trailer had been involved in an accident and noted that the damage "could be daily wear and tear." Detective Courtney did acknowledge that he failed to compare trailer 9107, which was commonly driven by Martinez, to other Las Nutrias' trailers, explaining "any other trailer there on scene could have looked the same way." Moreover, Edeal Dairy provided Detective Courtney with receipts from Transportation Rental & Sales, Inc., dated September 10, 2014 (fifteen days prior to the accident), related to multiple repairs, including welding cracks, removing and replacing part of the Las Nutrias trailer's suspension system, and alignment.

{20}   Although Detective Courtney did not reach a conclusion regarding the cause of damage to the Las Nutrias trailer, an expert witness for the Defendants, Torrey Roberts, concluded to "a reasonable degree of engineering probability that [the] Las Nutrias trailer . . . was not involved in the collision . . . on September 25, 2014."[5] Roberts, a professional engineer, with experience in accident reconstruction of tractor-trailers and heavy equipment, investigated the Las Nutrias trailer as well as Reyes's Chevrolet Silverado truck. Roberts stated that his inspection of the Las Nutrias trailer "evinced no damage indicating it had been in a motor vehicle accident of the nature that was described as between . . . Reyes's Chevrolet Silverado [truck] and the unidentified tractor-trailer[.]" Roberts noted that "obvious and noticeable damage would have

---

[5]The parties dispute whether expert testimony is required by Plaintiffs, who called no expert, to prove that the damage to the Las Nutrias trailer was consistent with a hit-and-run accident. Defendants assert that "[e]xpert testimony is required to give conclusions about the causes of an automobile accident or to opine about the meaning of observations of the scene." Because we determine that the damage to the Las Nutrias trailer does not create a genuine dispute of material fact that it was involved in an accident, we decline to reach this issue.

occurred to the rear of the [unidentified tractor-]trailer where . . . Reyes testified his vehicle contacted the unidentified tractor[-]trailer." He also explained that the various conditions observed by Detective Courtney, including peeled-off reflective tape, cracked welding and bends in the rails were apparent on the entire trailer, including on the opposite passenger side, and noticed similar conditions on another trailer he inspected at Las Nutrias.

{21} Because Plaintiffs offered no admissible evidence, expert or otherwise, rebutting Detective Courtney's testimony that he could not conclude the Las Nutrias trailer had been involved in an accident, as well as Defendants' expert testimony and conclusions that the Las Nutrias trailer had not been involved in the September 25, 2014, collision, we conclude that there is no genuine dispute of material fact presented by the damage to the Las Nutrias trailer.

**D.      Additional Contentions Raised by Plaintiffs Are Arguments of Counsel and Do Not Create Genuine Dispute of Material Fact**

{22} Plaintiffs contend that because Defendants were initially uncooperative with Detective Courtney's investigation, there is a genuine dispute of material fact. Plaintiffs assert that "Edeal Dairy's refusal to cooperate with the investigation creates an inference that it knew Martinez was involved in the hit-and-run crash." Specifically, Plaintiffs argue that "Detective Courtney attempted to informally obtain documentation from Edeal Dairy, but its receptionist, Joyce Thomas, informed Detective Courtney that her boss, Scott Edeal, had told her not to cooperate with the investigation." Defendants answer that while Thomas was instructed not to release various documents, she was not instructed to not cooperate.

{23} Our own review of the record indicates that Defendants, including Las Nutrias, Edeal Dairy, and Martinez were cooperative. While Detective Courtney obtained a search warrant after his initial conversation with Thomas, he stated, "I felt Joyce was being cooperative. . . . But we just needed to get the information[,] so I went the search warrant route." Detective Courtney also stated that he remembered Martinez as cooperative. He similarly stated that Edeal Dairy was "very cooperative with us." Because the record indicates that Defendants were in fact cooperative, Plaintiffs' contentions that Defendants were uncooperative are merely arguments of counsel. *See V.P. Clarence Co. v. Colgate*, 1993-NMSC-022, ¶ 2, 115 N.M. 471, 853 P.2d 722 (stating "the briefs and arguments of counsel are not evidence upon which [we] can rely in a summary judgment proceeding").

{24} Plaintiffs also suggest that Martinez was injured in a work-related accident. They rely on testimony by Thomas who stated that "Martinez had driven for the dairy but had recently quit for an unknown reason." Defendants answer that Plaintiffs' arguments are a "misleading recitation of the testimony[,]"and that Martinez had been injured in a nonwork related accident. Our review of the record shows that Martinez was not working the week prior to the accident because he was injured in a car accident involving his personal vehicle. Thomas also clarified that Martinez mentioned the

accident was "nonwork related." Because Plaintiffs provide no additional evidence that Martinez was injured in the September 24 accident, Plaintiffs' contentions in this regard again are merely unsupported arguments of counsel. *Id.*

**CONCLUSION**

**{25}** Because Plaintiffs fail to provide admissible evidence creating a genuine dispute of material fact that Martinez was the driver, or that Defendants owned the unidentified tractor-trailer, the district court correctly concluded that summary judgment was proper. *See Carrillo*, 2017-NMCA-024, ¶ 24 (the nonmoving party must "demonstrate the existence of specific evidentiary facts which would require trial on the merits" (internal quotation marks and citation omitted)). For these reasons, we affirm the district court's grant of the Defendants' motion for summary judgment.

**{26}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**